| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>_____X<br><br>ASHLEY GRANATA and<br>AUTUMN DEVA GINSBURG,<br><br><br>     Docket #:<br>                         Plaintiffs,<br><br><br>     v.<br><br><br>JERRY JACOBS, ALAN ROSEN,<br>358 BROADWAY LLC &<br>358 BROADWAY REALTY, LLC,<br><br>                         Defendants.<br>_____X |
|---|

Civil Action No:  07-CIV-5830

## MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR IN THE ALTERNATIVE A PRELIMINARY INJUNCTION

Plaintiffs, Ashley Granata ("Ms. Granata") and Autumn Deva Ginsburg ("Ms. Ginsburg") by their attorneys, Nelson, Levine, de Luca & Horst, LLC.  Hereby move this honorable court, pursuant to the Federal Rules of Civil Procedure Rule 65 (a) and (b) for a preliminary Injunction and/or a Temporary Restraining Order against Defendants Jerry Jacobs, Alan Rosen, 358 Broadway, LLC, ("358 Broadway") and 358 Broadway Realty, LLC, ("359 Broadway Realty").

**BACKGROUND OF CASE**

This is a civil action by Ms. Granata and Ms. Ginsburg to enforce the Federal Fair Housing Act ("FHA"), 42 U.S.C.§3601 et seq., and the New York State Human Rights Law, Executive Law §290 et seq., and obtain redress for Defendant Jerry Jacobs' and Alan Rosen's sexual harassment of Plaintiffs, intentional infliction of emotional distress and retaliation against plaintiffs for their assistance in enforcing the rights of Jennifer Dunlap and Kathryn Smith in the related action of *Jennifer Dunlap and Kathryn Smith v. Jerry Jacobs and 358 Broadway, LLC*, United States District Court, Southern District of New York, Docket No. 06-CV-6160.

**FACTUAL BACKGROUND**

Plaintiffs filed the lawsuit attached as **Exhibit "A"** on June 20, 2007 setting forth claims under the Federal FHA as well as state law claims. Plaintiffs also sought preliminary injunctive relief to prevent the defendants from instituting eviction proceedings. However, on July 3, 2007, defendants started eviction proceedings in New York Housing Court. A copy of the Notice of Petition and Petition are attached as **Exhibit "B".** The Petition was served on plaintiffs on July 12th and is returnable on Wednesday July 18th.

**STANDARD FOR GRANTING PRELIMINARY INJUNCTIONS
AND TEMPORARY RESTARINING ORDERS**

The standard for issuing a preliminary injunction is set forth in *Random House, Inc. v. Rosetta Books LLC,* 283 F.3d 490, 491 (2d Cir.2002),

> A party seeking a preliminary injunction [against a nongovernmental entity] in this Circuit must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

The standard for issuance of a temporary restraining order is set forth *Gerber v. Seamans*, 332 F.Supp. 1187, 1190 (S.D.N.Y. 1971):

> The prayer for a temporary restraining order is addressed to the equitable judgment of the Court. Resolution of the question is founded on considerations of irreparable injury to the movant and the probability of his ultimate success.

Here, the moving parties meet the standard for issuance of either a Preliminary Injunction or a Temporary restraining Order pending a full hearing on a Preliminary Injunction.

## ARGUMENT

### I.   Plaintiffs Will Clearly Suffer Irreparable Injury

Defendants' maintenance of a parallel State Housing Court proceeding without a doubt will cause the plaintiffs irreparable injury. The threat of eviction and homelessness clearly qualifies as the type of irreparable injury to satisfy the first prong of the Preliminary Injunction standard. *McNeill v. New York City Housing Authority*, 719 F.Supp. 233, 254 (S.D.N.Y. 1989).

Initially, it appears that the Summary Proceedings papers are inconsistent with the defendants' position taken in this litigation. The Summary proceeding papers claim that there was a written lease, however Plaintiffs and Defendants in their cross-claims have claimed that no written lease was granted. It is unclear whether this statement represents some ruse or a mere typographical error. Of course, Defendants will claim that the question of the leasehold interest is distinct from the Plaintiffs' claims.

One basis for liability against the Defendants is that their failure to offer written leases was a part of the discriminatory conduct directed against the prior Complainants as well as the

current Plaintiffs. In addition the failure to offer renewal terms could also be considered as part of the retaliation claim.

It is clear that New York law will not allow for the hearing of these claims in conjunction with the eviction proceeding. *See, e.g.,* Committed Community Associates v. Croswell, 171 Misc.2d 340, 343, 659 N.Y.S.2d 691 (N.Y.Sup.Ct.1997) ("[T]he need for speedy dispositions in landlord-tenant matters ordinarily dictates that counterclaims be severed unless they are in essence a defense to landlord's claim or so intertwined with such a defense as to become part and parcel thereof."); Smalkowski v. Vernon, No. 80162/00, 2001 WL 914248 (March 9, 2001 N.Y. City Civil Ct.) (severing federal race and disability discrimination counterclaims in holdover proceeding: "[T]he court finds that these claims would be better litigated in a plenary proceeding ... rather than in ... this summary proceeding in the housing court, which was created for the purpose of enforcing state and local laws for the establishment and maintenance of housing standards." ) (internal quotation marks omitted).

Without a doubt, the continuance of the Housing Court Action would result in the Plaintiffs being driven from their home contrary to their rights under the FHA and the New York Executive law. Being driven from one's home is perhaps the quintessential claim of irreparable harm.

II. **Plaintiffs' Claims Represent Serious Questions and a Strong Likelihood of Success on the Merits.**

The Plaintiffs here have presented a *prima facia* case of housing discrimination. There are several claims made all of which constitute housing discrimination. Initially, Plaintiffs claim that they were evicted in retaliation for their assistance in the previously filed *Dunlap* matter. The *Dunlap* matter went to mediation on Monday May 5th and four days later defendant Rosen was calling the Plaintiffs telling them that the building had been sold and that they were going to

be evicted. These facts are similar to *Bouley v. Young-Sabourin,* 394 F.Supp.2d 675 (D.Vt. 2005) wherein the plaintiff was served with an eviction notice 72 hours after arguing with the defendant over her religious beliefs. The *Bouley* court found that such allegations created a *prima facia* case of discrimination. As stated in *Frazier v. Rominger*, 27 F.3d 828 (2d. Cir.1994) "…if a plaintiff presents a prima facie case of discrimination, the burden of production shifts to the defendant to come forward with a 'legitimate, nondiscriminatory reason' for the adverse action." 27 F.3d at 831 (citations omitted).

Of course, Defendants will assert that they have a non-discriminatory reason for evicting the Plaintiffs. Namely, that the building had been sold and that they were merely trying to satisfy the "new" owners. However, there are several factors which call into question the nature of this transaction and the motives of the Defendants. It appears that they retained the right to evict the Plaintiffs even after the building was allegedly sold. Therefore, a question can be raised regarding whether the transaction was truly one of "arms length" or whether it was for another purpose.

In addition, Plaintiffs claim that their entire housing situation was the result of discriminatory practices by defendant Jacobs and that the eviction was part of a need to keep defendant Jacobs from further predatory acts. Certainly evicting Plaintiffs because they are women is not justified because it may "protect" them against predatory practices. Of course, Defendants will argue that they did sell the building and that the eviction was therefore for non-discriminatory reasons. However, again, based on the Defendants' own counter-claims, it is unclear whether this non-discriminatory reason is valid. Even if, as alleged, the "new" owners wanted to seek eviction why would they allow the "old" owners to bring those proceedings? Was this truly an "arms length" deal? In one allegation the "old" owners state that the potential "new" owners allowed them to take on "month-to-month" tenants. However, the subsequent

escrow seems to imply that there was a penalty attached. In addition, although the sale was supposedly pending for almost two years, the closing actually took place weeks after the settlement of the *Dunlap* matter which could allow an inference that it was related.

Overall, the question here is whether Plaintiffs have established a likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Random House, Inc.* 283 F.2d at 491. Clearly, Plaintiffs have established a *prima facia* case of discrimination. At a minimum, Defendants' asserted non-discriminatory bases raise serious question in light of the limited facts available to Plaintiffs absent full discovery on the matter.

### III.    The Balance Of The Hardships Weigh Heavily In Favor Of The Plaintiffs.

Without a doubt, the balance of hardships weighs heavily in favor of the Plaintiffs. They are being threatened with immediate eviction from their home. Defendants simply have no similar interest at stake. Plaintiffs are currently paying rent and have no objection to including a requirement that their rent be paid while the injunction is in place. Additionally, there is the obviously important practical consideration that denying relief will effectively deprive the Plaintiffs of their right to access to Federal Courts to seek redress of their Federally protected rights. They will be faced with the possibility of piecemeal litigation in multiple forums against a defendant who has the resources to hire separate counsel to prosecute these parallel actions. (This has already occurred as defendants have retained separate counsel on the Housing Court Matter).

Any countervailing interests of the Defendants are *de minimis*. There is no indication that Defendants will be harmed in any way by the granting of this injunction. These are just two, rent paying, tenants in a large building who have not broken any rules or caused any problems at the premises. Additionally, based on the Defendants' counterclaims, they are one of two apartments

that are facing eviction. They are certainly not the last "hold outs" in the building that are preventing any development from going forward.

**IV.    Neither *Younger* Nor The Anti-Injunction Act Preclude Relief and the Court Has the Power Under the All Writs Act to Enjoin and/or Order the Removal of the Parallel State Court Proceeding**

**A. *Younger* Abstention Does Not Apply Because Plaintiffs' Claims Cannot Be Presented in Housing Court**

*Younger* abstention does not apply when a state court proceeding does not allow for the presentation of a plaintiff's Federal claims. *Kirschner v. Klemons,* 225 F.3d 227, 233 (2d Cir.2000). It is well established that New York Housing Court proceedings fall within this exception to *Younger* abstention. *McNeil v. New York City Housing Authority,* 719 F.Supp. 233, 255 (S.D.N.Y.1989) ; *Tellock v. Davis*, 2002 WL 31433589 (E.D. N.Y. 2002). Certainly if the proceedings go forward this Wednesday, July 18, 2007, it will be clear that Plaintiffs' claims will not be tried by the Housing Court. In fact, New York law generally compels the severance of those claims. *Committed Community Associates v. Croswell,* 171 Misc.2d 340, 343, 659 N.Y.S.2d 691 (N.Y.Sup.Ct.1997); *Smalkowski v. Vernon,* No. 80162/00, 2001 WL 914248 (March 9, 2001 N.Y. City Civil Ct.).

**B.     The Anti-Injunction Act Does Not Preclude the Granting of Relief**

**1)   The Anti-Injunction Act Does Not Apply as This Case Falls Within Recognized Exceptions**

**a)  The Power to Issue an Injunction is Expressly Authorized by Statue**

An important exception to the Anti-Injunction Act is where such injunctions are expressly authorized by statute.  Courts are split on this issue.. *Martin v. Constance*, 843 F.Supp. 1321 (E.D.Mo.,1994). *Oxford House, Inc. v. Albany,* 819 F.Supp. 1168, 1172 (N.D.N.Y.1993); *Oxford House-Evergreen v. Plainfield,* 769 F.Supp. 1329, 1341 (D.N.J.1991); *But See Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo*, 988 F.2d 252 (1st Cir. 1993); *Pieczenik v. TIAA-CREF*, 2005 WL 637942 (S.D.N.Y.,2005) (Magistrate Eaton).   The *Casa Marie* court relied upon its belief that Congress had not sought to specifically deprive state courts of jurisdiction.  However, here, Congress has established a uniquely Federal right and specifically allowed for Federal court jurisdiction.  *Casa Marie* relies on a narrow interpretation of  *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151 (1972).  *Mitchum* holds that actions under 28 U.S.C. 1993 fall within the "expressly authorized" exception to the Anti-Injunction Act, stating squarely that the test is "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." 407 U.S. at 237.  The court in *Casa Marie* focused on the *dicta*  in *Mitchum* regarding the concerns over State court enforcement of a Federal right.  The key here is whether the Federal right, the right to fair treatment in housing can be given its "intended scope" only by a stay of the state proceeding.  The focus is not on what a State court *might* do but rather on what the Federal court *must* do to give the remedy its intended "scope."  Here, if the State court summary proceeding is allowed to go forward, the Federal court will be deprived of its ability to

enforce Plaintiffs' rights as it will be unable to issue any orders with regard to the apartment at issue.

### b) **The Injunction is In Aid of This Court's Jurisdiction**

The Anti-Injunction Act does not apply where an injunction is "necessary in aid of its jurisdiction" 28 U.S.C. § 2283. The "in aid of jurisdiction" exception authorizes federal relief where, as here, the Housing Court could not adequately hear plaintiffs' claims. . *McNeil v. New York City Housing Authority,* 719 F.Supp. 233, 255 (S.D.N.Y.1989) ; *Tellock v. Davis*, 2002 WL 31433589 (E.D.N.Y. 2002). Although these are District Court cases, the Second Circuit, while recognizing that the Anti-Injunction Act does not recognize a general "first to file" exception, nevertheless recognized that *in rem* proceedings are instances where such a "first to file" rule could apply. *Standard Microsystems v. Texas Instruments, Inc..,* 916 F.2d 58, 60-61 (2d Cir. 1990). Actions involving leasehold interests are usually considered *quasi in rem* proceedings. *See e.g. Smith v. Humble Oil & Refining Co*., 425 F.2d 1287 (5th Cir. 1970). Although such a proceeding is not strictly *in rem*, the *Humble Oil* court treated such actions as identical for purposes of determining when a court had obtained exclusive jurisdiction. *Id.* Here, this court had been asked by Plaintiffs to decide the question of their leasehold interests in light of their discrimination claims. In their Complaint they requested the Preliminary Injunctive relied now sought. As this leasehold has been put at issue in the Federal action this court has the right and duty to protect the exercise of its jurisdiction.

**CONCLUSION**

For the forgoing reasons, the plaintiffs respectfully request that this court issue a temporary restraining order and/or in the alternative, a preliminary injunction to prevent the prosecution of the State Housing Court action against Plaintiffs.

Respectfully Submitted,

**NELSON LEVINE de LUCA & HORST, LLC**

BY: _____/s/_____
MICHAEL J. FRIMET (2051),
ATTORNEYS FOR ASHLEY GRANATA
AND AUTUMN DEVA GINSBURG

Dated: July 16, 2007

To: David R. Brody, Esq.
Borah, Goldstein, Altschuler, Nahins & Goidel, P.C.
377 Broadway, 6th Floor
New York, New York 10013
**Attorneys for 358 Broadway Realty, LLC**

Mark N. Axinn., Esq.
Brill & Meisel
845 Third Avenue, 16th Floor
New York, NY 10022
 **Attorneys for Jerry Jacobs, Alan Rosen and 358 Broadway, LLC**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

**ASHLEY GRANATA and**
**AUTUMN DEVA GINSBURG,**

    **Docket #:**
               **Plaintiffs,**

    **v.**

**JERRY JACOBS, ALAN ROSEN,**
**358 BROADWAY LLC &**
**358 BROADWAY REALTY, LLC,**

               **Defendants.**
_____X

Civil Action No: 07-civ-5830

## CERTIFICATE OF SERVICE

    I, Michael J. Frimet , hereby certify that a true and correct copy of the Motion for Temporary Restraining Order and/or in the alternative a Preliminary Injunction was served on July 16, 2007, upon counsel listed below by United States Mail, postage prepaid.

                         **NELSON LEVINE de LUCA & HORST, LLC**

                         **BY:** _____/s/_____
                                   MICHAEL J. FRIMET (2051),
                                   ATTORNEYS FOR ASHLEY GRANATA
                                   AND AUTUMN DEVA GINSBURG

Date: <u>July 16, 2007</u>

To:    David R. Brody, Esq.

Borah, Goldstein, Altschuler, Nahins & Goidel, P.C.
377 Broadway, 6th Floor
New York, New York 10013
**Attorneys for 358 Broadway Realty, LLC**

Mark N. Axinn., Esq.
Brill & Meisel
845 Third Avenue, 16th Floor
New York, NY 10022
**Attorneys for Jerry Jacobs, Alan Rosen and 358 Broadway, LLC**