UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――X
ASHLEY GRANATA and
AUTUMN DEVA GINSBURG,

    Docket #:
                    Plaintiffs,

                                                    Civil Action No: 07-CIV-5830

    v.

JERRY JACOBS, ALAN ROSEN,
358 BROADWAY LLC &
358 BROADWAY REALTY, LLC,

                  Defendants.
―――――――――――――――――――――――X

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs submit this Supplemental Memorandum in Support of their Motion for a Preliminary Injunction:

### I. The Written Agreement between Defendants Did Not Allow For Any Additional Leases

Defendants claim that the written agreement between the parties allowed only for oral month-to-month leases. However, a clear reading of the agreement indicates that *no* leases of any kind were contemplated by the agreement. The relevant provisions are as follows:

> §6.01. Unless otherwise provided in a schedule attached to the Contract, the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent:
>
> a. amend, renew or extend any Lease in any respect unless required by law;
>
> b. grant a written lease in any tenant occupying space pursuant to a Tenancy; or

    c.    terminate any Lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02. subject to paragraph 25 hereof, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for space in the building which is presently vacant or which may hereafter become vacant.

Defendants may focus on § 6.01(b) as not allowing for "written" leases. However, in the context of this dispute, the Contract of Sale was entered into *before* Ms. Granata or Ms. Ginsberg began their tenancies. Therefore, it is §6.02 which is applicable which disallows *any* new leases.

Quite clearly, the first provision does not allow for any *written* leases with current tenants. However, the subsequent provision indicates that no additional leases are contemplated for any *new* tenants. All current tenants were set forth in an **Exhibit "B"** to the Third Rider of the Contract. Significantly, it is clear that prior plaintiff Smith had a written lease in September, 2004. See Defendants' Answer to *Smith* Complaint, ¶ 8, (Referring Court to Document). However the *declared* tenant for the 3rd Floor is listed as Webster. Ms. Smith is not listed as a declared tenant although Defendants Jacobs, Rosen and 358 Broadway have all warranted in the Contract of Sale that this was an accurate listing. See Contract of Sale, §4.03.

Of further significance is that with regard to *declared* tenants, the parties have specifically agreed that a holdover by those tenants will affect the sale. Of further interest is Paragraph 25 which provides as follows:

25. Tenancies

    a) If any tenants fail to comply with their obligations under their leases or tenancies prior to the Closing Date, Seller may enforce its rights by terminating their leases by summary proceeding or otherwise, and Purchaser shall accept the Premises with or without such leases being in effect as the case may be.

    b) Seller does not represent that the leases or tenancies affecting the Premises on the date of the Contract will be in effect in the Closing Date. It is agreed and understood that no representation has been made and no responsibility is assumed by Seller with respect to the continued occupancy of any portion of the Premises by any tenant prior to the Closing Date, whether by summary

proceedings or otherwise, shall not give rise to any claim on the part of Purchaser or affect this Contract in any manner whatsoever.

Quite clearly, Subpart (b) contemplates that the Seller will have "no responsibility" for any continued occupancy.

## II. Impact of Written Agreement on Plaintiffs' Claims

Defendants would have this Court believe that the written agreement provides an independent basis for concluding that defendant Jacobs could *only* have agreed to an oral month-to-month tenancy. However, there is no basis for concluding this as it appears that the four corners of the Agreement would not have allowed Defendant Jacobs to enter into *any* tenancy.

Defendants' claims that the Contract of Sale "ends" the issue are unavailing. In apparent recognition of this, the Defendants Jacobs, Rosen and 358 Broadway, LLC actually claim that a side agreement between the parties contemplated such oral month-to-month leases. *Answer and Counterclaims of Defendants Jacobs, Rosen and 358 Broadway, LLC,* ¶ 63. It is therefore this understanding that these Defendants utilize as a basis for claiming that Defendant Jacobs was *unable* to enter into any leases but oral.

However, even this assertion is questionable. Correspondence sent to Defendant 358 Broadway, LLC dated May 1, 2007 indicates that the Purchaser considered the continued occupancy of Ms. Ginsberg and Ms. Granata as a *default* of the terms of sale. As the Agreement, Paragraph 25 clearly states that any holdover tenants cannot be considered a basis for default, one would have expected that any such understanding would have been utilized as a response to the May 1st correspondence.[1] Of course, Defendants now point to the May 1st correspondence as the basis for the subsequent attempts to seek the immediate eviction of Plaintiffs. Further, where it seems that the Defendants specifically erased proposed language allowing for the approval of new tenancies (See Contract of Sale §6.02 as amended), it is difficult to understand how they

---

[1] In what the Defendants would no doubt consider a coincidence, this letter was issued the same day as the mediation session in the *Dunlap* matter

nevertheless would have agreed to allow for oral tenancies with no review by the proposed purchasers.

Defendants seek to have it both ways. In response to claims that Plaintiffs were discriminated against by Jacobs in the terms of their lease, Defendants point to the supposed "limitation" on Jacobs to offer *only* oral "month-to-month" leases. However, when faced with a claim that their actions in terminating that lease were improper, they point to the May 1st "demand" which states on its face that there was no such authorization.

However, this Court need not resolve these inconsistencies to grant Plaintiffs the relief they request. The key is that the Contract of Sale is by its own terms irrelevant to the issue of what occurred between Ms. Ginsberg, Ms. Granata and Defendant Jacobs. Either, Defendant Jacobs was specifically authorized by a side agreement to 358 Broadway Realty to enter into a lease or 2) he was acting entirely outside of any authorization. Under the first scenario, Defendant Jacobs is acting with the express authority of Broadway Realty as its agent and thus binds them to any acts within his apparent authority. Under the second scenario, Defendant Jacobs' actions would bind 358 Broadway Realty as successor in interest to 358 Broadway (of which Defendant Jacobs was a principal.

### III.   Implied Year-to year Leases Are Permitted Under New York Law

The real issue is what occurred between Defendant Jacobs and Ms. Granata and Ms. Ginsberg. New York law recognizes implied year-to-year tenancies under appropriate circumstances. 28 *Mott Street v. Summit Import Corporation*, 34 A.D.2d 144, 310 N.Y.S.2d 93 (1st Dept. 1970). It is true that Section 232-c of the Real Property Law declares that a *holdover* tenant is only entitled to a month-to-month tenancy, this statute was clearly intended for the protection of *tenants*. See *Mott Street,* 34 A.D.2d at 146. Certainly, if the *landlord* were trying to claim that Ms. Granata's holding over created a new yearly tenancy, Section 232-c would apply

to prevent that. However, it simply does not apply where the *tenant* is seeking to claim such a tenancy.

Therefore, subject to the Statute of Frauds, determining the terms of an oral rental agreement is no different than any other agreement. Here, Ms. Granata paid four months rent up front. There is no indication that she was seeking a short term lease nor was there any notification that this was intended to be a short-term tenancy. Ms. Granata was looking for a home, not a temporary place to live. She would readily have signed a one-year lease just like her co-tenants at the time. Ms Ginsberg, who moved in later, while not providing such additional advanced rent, became the sole co-tenant with Ms. Granata. They were billed jointly for the space. Quite clearly, Ms. Gingsberg was also looking for a home and not a temporary residence. Had Defendant Jacobs been acting fairly, and not in violation of the Fair Housing Act and the analogous State provisions, plaintiffs would have received the security of a year-to-year lease.

### IV. This Court Should Grant the Preliminary Injunction to Allow For The Resolution of These Factual Issues and To Permit Complete Relief

Although all other Defendants appear to distance themselves from the actions of Defendant Jacobs, such distance only reinforces Plaintiffs' claims that they were the victims of a scheme by Defendant Jacobs to lease Apartment 3A to potentially vulnerable women who he could later seek to exploit should they run into trouble meeting their lease payments. Defendant Jacobs seized on the opportunity with Ms. Smith and would want to leave Ms, Ginsberg and Ms. Granata as vulnerable as possible. The terms and conditions of the lease are therefore central to Plaintiffs' claim. Absent allowing for a yearly lease, Defendants are benefiting from the fruits of Defendant Jacob's actions.

Certainly the Federal Fair Housing Act ("FHA"), 42 U.S.C. §3601 et seq., and the New York State Human Rights Law, Executive Law §290 Fair Housing Act authorizes such declaratory relief, in addition, New York law authorizes injunctions to restrain eviction proceedings in the commercial context when defendants are faced with issues over their failure

to cure a default. *First National Stores, Inc. v. Yellowstone Shopping Center, Inc.*, 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E.2d 868 (1968). Defendants are here in an analogous situation in that their rights under the Fair Housing Act will be jeopardized if the eviction action is allowed to move forward.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that this court issue a Preliminary Injunction.

                                          NELSON LEVINE de LUCA & HORST, LLC

BY: _____
George J. Vogrin, Esq. (GJV/5889)
Attorneys for Plaintiffs
Ashley Granata and Autumn Deva Gingsburg
120 Broadway, Suite 955
New York, NY 10271
(212) 233-0130
Fax: (212) 233-0172

Dated:     July 24, 2007
              New York, New York

To:    Brill & Meisel
Mark N. Axinn, Esq.
Attorneys for Defendants
Jerry Jacobs, Alan Rosen and 358 Broadway, LLC
845 Third Avenue, 16th Floor
New York, NY 10022

Borah Goldstein Altschuler Nahins & Goidel, P.C.
David R. Brody, Esq.
Attorneys for Defendant
358 Broadway Realty, LLC
377 Broadway, 6th Floor
New York, NY 10013