**BRILL & MEISEL**
Mark N. Axinn (MA-4958)
845 Third Ave., 16th Floor
New York, New York 10022
(212) 753-5599
*Attorneys for Defendants Jerry Jacobs, Alan Rosen
and 358 Broadway LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ASHLEY GRANATA and AUTUMN DEVA
GINSBURG,

                    Plaintiffs,

     v.

JERRY JACOBS, ALAN ROSEN,
358 BROADWAY LLC, and
358 BROADWAY REALTY, LLC,

                    Defendants.
---------------------------------------------------------------X

Case No. 07 CV 5830 (CM)
(electronically filed)

**AFFIDAVIT OF JERRY JACOBS
IN OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION TO
ENJOIN CIVIL COURT
DISPOSSESS ACTION**

TO: Hon. Colleen McMahon, United States District Judge

STATE OF NEW YORK  )
                           ) ss.:
COUNTY OF NEW YORK  )

      JERRY JACOBS, being duly sworn, deposes and says:

      1.    I am a resident of the City, County and State of New York and at all times relevant to this action was and am a member and Manager of 358 Broadway LLC ("358 Broadway").

      2.    Defendant Alan Rosen is a resident of the State of New York and at all times relevant to this action was and is a member and Manager of 358 Broadway.

3. Defendant 358 Broadway is a limited liability company organized under the laws of the State of New York. 358 Broadway was one of the former fee owners of the building and land located at 358 Broadway a/k/a 59 Franklin Street, New York, New York ("Building"). The other fee owners were each minority members of 358 Broadway to whom fee title to their respective percentage interests was deeded on April 1, 2007 in connection with their individual tax planning.

4. At all relevant times herein, the Building has been a mixed-use premises, comprised of various commercial units including offices, stores and performance studios, as well as rent-stabilized residential apartments and non-rent-stabilized or "fair market" residential apartments, one of which is Apartment 3A (the "Apartment") where plaintiffs reside. The Building has two entrances, one on Broadway and one on Franklin Street.

## THE CONTRACT OF SALE

5. In March 2005, Mr. Rosen and I entered into negotiations for the sale of the Building to a predecessor-in-interest to defendant 358 Broadway Realty, LLC ("Realty").

6. On April 4, 2005, defendants 358 Broadway and Realty executed a heavily-negotiated written Contract of Sale ("Contract") of the Building, which provided, *inter alia*, for a Closing Date of on or before April 30, 2007. The Contract contained three riders and also was amended three times since it was first executed in 2005. [A copy of the complete Contract, as amended, is annexed hereto as Exhibit 1.]

7. One of the most negotiated issues in the Contract concerned tenancies at the Building. As sellers, we were advised that Realty wished the Building to be emptied of as many tenants as possible in connection with Realty's future development of the Building. Accordingly, 358 Broadway agreed not to renew nor enter into any written leases for any portions of the Building between the date of execution of the Contract and the Closing Date, whether with existing or new tenants, except to the degree required by the Rent Stabilization Law.

## MANY TENANTS ONLY HAVE MONTH-TO-MONTH LEASES

8. Notwithstanding any provision to the contrary in the Contract, representatives of defendant Realty advised Mr. Rosen and me that we could enter into oral month-to-month tenancies with individual tenants so long as these tenancies would terminate on or before the Closing Date. In fact, we did so with new tenants at two apartments at the Building, Apartments 3A and 6D.

9. Additionally, several leases at the Building have expired after execution of the Contract. [A list of all tenants including those with expired leases and the dates of expiration is annexed hereto as Exhibit 2.] None of those leases were renewed although many of the tenants were permitted to remain and did so on a month-to-month basis.

## THE RENTALS TO EACH PLAINTIFF

10. At the time of execution of the Contract, Apartment 3A was leased to three individuals pursuant to a written lease expiring on October 31, 2005, a copy of which is annexed hereto as Exhibit 3. As is common when a large apartment is rented to young individuals, some of the named tenants vacated the Apartment prior to others. In this case, when two of the named tenants (Ms. Webster and Ms. Nakashima) had vacated by the summer of 2005, I agreed to rent a portion of the Apartment to plaintiff Ashley Granata commencing July 1, 2005. Thereafter, when the remaining named tenant on the written lease (Ms. Smith) moved out, I agreed to rent a portion of the Apartment to plaintiff Deva Ginsburg commencing December 1, 2005.

11. I did not offer either Ms. Granata nor Ms. Ginsburg a written lease as I was specifically prevented from doing so by my agreement to sell the Building. [See Contract, Exhibit 1, Sections 6.01 and 6.02, page 5.] Accordingly, plaintiffs' occupation of the Apartment has always been pursuant to oral month-to-month tenancies and was never pursuant to any written or implied tenancy for any other term.

12. I am advised that under New York law, a lease for a term of over one year must be in writing. Significantly, no such written lease for either plaintiff is extant. Moreover, even if plaintiffs had occupied the Apartment pursuant to written or oral leases for a term of one year as alleged in the Complaint, pursuant to New York State Real Property Law 232-c, after the expiration thereof plaintiffs' continued residence in the Apartment and 358 Broadway's continued receipt of rent payments would have created implied month-to-month leases beginning July 1, 2006 (Granata) and December 1, 2006 (Ginsburg), not any year-to-year leases.

## THE DUNLAP LITIGATION

13. On or around August 14, 2006, a former tenant in the Apartment, Kathryn Smith and an applicant to rent the apartment, Jennifer Dunlap, commenced an action entitled *Jennifer Dunlap and Kathryn Smith v. Jerry Jacobs and 358 Broadway, LLC*, United States District Court, Southern District of New York, Docket No. 06-CV-6160 ("Dunlap lawsuit") against 358 Broadway and me alleging that I had sexually harassed them. The allegations in the Dunlap lawsuit did not include any allegations pertaining to discriminatory behavior against plaintiffs herein that is alleged in the current Complaint. Plaintiffs in this action were neither parties to, nor mentioned in the Complaint in the Dunlap lawsuit.

14. On April 17, 2007, the parties to the Dunlap lawsuit agreed to settle that case.

## THE DEMANDS BY THE BUYER THAT 3A AND 6D BE VACATED

15. As noted above, the Contract provided for a Closing Date of on or before April 30, 2007. Shortly before such date, representatives of Realty advised Mr. Rosen and me that 358 Broadway was in default of its obligations under the Contract because we had failed to obtain vacant possession of Apartments 3A and 6D. On May 1, 2007, Realty's attorney Arthur Mantel wrote to us advising that Realty considered us in default of the Contract because of the continuing occupancy of Apartment 3A by plaintiffs and of Apartment 6D by another month-to-month tenant, Mr. Asi Erenberg. [A copy of Mr. Mantel's May 1, 2007 Notice of Default is

annexed hereto as Exhibit 4.] In response thereto, Mr. Rosen and I agreed that we would have to advise the tenants of both units that they would have to vacate as soon as possible.

16.   On or about May 4, 2007, Mr. Rosen attempted to contact each plaintiff by telephone to provide each of them with advance notice of the Building's imminent sale and that their landlord, 358 Broadway, would terminate plaintiffs' month-to-month leases at the end of the month. Mr. Rosen also indicated that he would attempt to obtain a brief extension of time for plaintiffs to vacate the Apartment should they so desire.

17.   At that time, Mr. Rosen also advised Mr. Erenberg in Apartment 6A at the Building that 358 Broadway would terminate his tenancy at the end of May 2007 as well.

18.   On May 31, 2007, defendant 358 Broadway served each plaintiff with a written notice advising her of the termination of her month-to-month tenancy and indicating each plaintiff's legal obligation to vacate the Apartment no later than June 30, 2007. [Copies of such notices with proof of service thereof are annexed hereto collectively as Exhibit 5.]

### THE NEGOTIATIONS WITH PLAINTIFFS

19.   During May, 2007, plaintiffs' counsel George Vogrin contacted our attorney Mark Axinn to negotiate an extension of time for plaintiffs to remain in the Apartment after their tenancies' termination on June 30, 2007 and reimbursement of various relocation expenses. I am advised that Mr. Vogrin and Mr. Axinn exchanged a number of telephone and email communications over a period of approximately two weeks. Mr. Axinn prepared and mailed Mr. Vogrin a Stipulation for each plaintiff which would have provided her with the right to remain in the Apartment rent-free until July 31, 2007 plus a relocation payment. Plaintiffs refused to sign the Stipulations. [Copies of Mr. Axinn's letter to Mr. Vogrin dated May 16, 2007 and the two Stipulations are collectively annexed hereto as Exhibit 6.]

20. At no time during such negotiations, nor during any communication prior to the filing of the Complaint in this action on June 20, 2007, did Mr. Vogrin complain that either plaintiff suffered sexual harassment, unequal treatment due to her sex, retaliation, or emotional distress based on the actions of any of the defendants.

### THE CLOSING AND THE ESCROW AGREEMENTS

21. On June 12, 2007, the closing was held and defendants 358 Broadway and Realty completed the sale of the Building. [Copies of the deeds executed and delivered by 358 Broadway and the other fee owners of the Building are collectively annexed hereto as Exhibit 7.]

22. As part of the sale, defendants 358 Broadway and Realty entered into a written escrow agreement ("Escrow Agreement"), a copy of which is annexed hereto as Exhibit 8, whereby 358 Broadway promised to use its best efforts to obtain vacant possession of the Apartment at the earliest possible date and not to permit any other person or persons to occupy the Apartment. Toward this end, 358 Broadway agreed to place $200,000 in escrow ("Escrow Sum") to be delivered to defendant Realty in the event that the Apartment has not been vacated and vacant possession thereof delivered to defendant Realty on or before February 1, 2008.

23. Also on June 12, 2007, defendant 358 Broadway executed multiple copies of a notice to the tenants of the Building advising them of the Building's sale ("Notice of Sale"), and delivered them to an attorney for Realty for distribution to all tenants in the Building. [A copy of the Notice of Sale is annexed hereto as Exhibit 9.]

### THE INSTANT MOTION SHOULD BE DENIED

24. Plaintiffs are and were aware of the sale of the Building. Additionally, on or about June 14, 2007, Mr. Axinn advised Mr. Vogrin of the existence of the Escrow Agreement between defendants 358 Broadway and Realty directing and authorizing 358 Broadway to commence proceedings against plaintiffs to vacate the Apartment and forwarded him a copy of the Notice of Sale for his records.

25. In accordance with the New York Real Property Law, plaintiffs resided at the Apartment pursuant to month-to-month, not year-to-year tenancies as erroneously alleged in the Complaint and in this motion. Plaintiffs have held over possession of the Apartment since the time their tenancies expired on June 30, 2007 in violation of New York law.

26. On June 20, 2007, ten days before their month-to-month tenancies would expire in accordance with the New York State Real Property Law, plaintiffs filed the Complaint herein containing novel and baseless allegations that I had sexually harassed them and that Mr. Rosen, 358 Broadway and I were evicting them (and thus inflicting emotional distress) because plaintiffs herein had assisted the plaintiffs in the Dunlap lawsuit. In fact, other than the appearance of Ms. Granata's name on a witness list in the Dunlap lawsuit, neither Mr. Rosen nor I have any knowledge whatsoever of the degree of participation, if any, by either Ms. Granata or Ms. Ginsburg in the Dunlap lawsuit. Neither Ms. Granata nor Ms. Ginsburg ever appeared in Court or at any of the other proceedings in that action. Moreover, we are not aware of any prior complaints of sexual harassment, unequal treatment due to sex, or infliction of emotional distress by either plaintiff in this action.

27. Plaintiffs' month-to-month tenancies were terminated on the basis of good faith, legitimate business judgment in accordance with the rights of the parties herein because the Building has been sold and the Contract requires the Apartment to be vacant, not because of their sex or because of any retaliatory animus on any defendant's part. On the other hand, I believe that plaintiffs commenced the present action in bad faith solely in order to delay their evictions from the Apartment. Quite simply, I believe that this lawsuit, and particularly this motion, are no more than a stalling tactic by plaintiffs to circumvent and to delay the eviction proceedings filed against them in the Civil Court after the expiration of their month-to-month tenancies. [Copies of the Notice of Petition and Petition filed in the Civil Court are collectively annexed hereto as Exhibit 10.]

28.   In any event, this Federal Court should decline to interfere in a routine landlord and tenant dispute and the instant motion should be denied. With respect to the discrimination claims, plaintiffs can be compensated by money damages. Therefore, they have an adequate remedy at law. Additionally, while they have no likelihood of success on the merits of their claim that they may remain in occupancy after the termination of their month-to-month tenancies, they are free to raise it as a defense to the Civil Court holdover proceedings in that forum where landlord and tenant disputes properly belong. This Court need not and should not be burdened with a routine landlord and tenant dispute.

**WHEREFORE**, defendants Jerry Jacobs, Alan Rosen and 358 Broadway LLC, respectfully request this Court deny the instant motion for a temporary restraining order or a preliminary injunction enjoining defendants from proceeding with the dispossess proceeding against plaintiffs presently pending in the Civil Court of the City of New York, together with such other and further relief as to this Court may seem just and proper.

Jerry Jacobs

Sworn to before me on July 24, 2007

_____
Notary Public

MARK N. AXINN
NOTARY PUBLIC, State of New York
No. 02AX4758223
Qualified in New York County
Commission Expires February 18, 20__

BRILL & MEISEL
*Attorneys for Defendants Jerry Jacobs,
Alan Rosen and 358 Broadway LLC*

By: _____
Mark N. Axinn (MA-4958)
845 Third Avenue, 16th Floor
New York, New York 10022
(212) 753-5599

TO: George Vogrin, Esq.
NELSON, LEVINE, DELUCA & HORST
*Attorneys for Plaintiffs*
120 Broadway, Suite 955
New York, New York 10271

David Brody, Esq.
BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL
*Attorneys for Defendant 358 Broadway Realty LLC*
377 Broadway
New York, New York 10013